NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CYNTHIA GENC,<br><br>      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Civil Action No. 12-3557 (SDW)<br><br>**OPINION**<br><br>March 6, 2013 |

**WIGENTON,** District Judge

  Before this Court is Plaintiff Cynthia Genc's ("Plaintiff" or "Genc") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Michal L. Lissek's ("ALJ Lissek") denial of Genc's claim for Social Security Disability Insurance Benefits ("SSDI") pursuant to 42 U.S.C. § 405(g).

  This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). On appeal, Genc argues that the substantial evidence in the record establishes her entitlement to SSDI; thus, this Court should reverse ALJ Lissek's decision, or in the alternative, remand this case and order a new hearing. For the reasons stated herein, this Court **AFFIRMS** ALJ Lissek's decision.

1

**FACTUAL HISTORY**

    A. **Personal and Employment History**

Genc was born on September 23, 1954. (R. 28.) Genc attended high school until the twelfth grade, but did not graduate and does not have a GED. (R. 28-29.) Although Genc lives by herself, her daughter lives next door and helps with chores. (R. 39.)

From 1994 to 1997, Genc worked as a receptionist for the Workers' Compensation Rating Bureau in San Francisco, California. (R. 34, 36, 143, 146.) From 1997 to 1998, Genc worked in the accounting department at Scott Specialty Gases in South Plainfield, New Jersey. (R. 143, 145.) From 1998 to 2007, Genc was a secretary at Punch Products[1] engaging primarily in data entry; however, she also engaged in customer service, answering telephones, and mailroom duties. (R. 33-34, 143-144.)

Genc claims that she has been unable to work since October 3, 2007 because of her disabling condition. (R. 118.) Since 2008, Genc has been working part-time "showing apartments" and is compensated $300.00 every two weeks. (R. 17, 29.)

    B. **Medical History**

Since 1998, Genc has been a patient of Dr. Michael Guma ("Dr. Guma") who is affiliated with North Jersey Rheumatology Associates. (R. 38, 275.) Dr. Guma diagnosed Genc with Systemic Lupus Erythmatosus ("Lupus") and degenerative rheumatoid arthritis. (See R. 15, 17, 275.)

On December 27, 2006, Dr. Guma assessed that Genc presented with Lupus and elevated transaminases. (R. 234.) Dr. Guma indicated that Genc was feeling better, had more "good days" than "bad days," she appeared pleasant, and was in no apparent distress. (R. 234.) Dr. Guma noted that Genc was not compliant with her folic acid. (R. 234.)

---

[1] The location of Punch Products is not reflected in the record.

2

On May 16, 2007, Dr. Guma noted that Genc reported not having any bad days, she was tolerating her medications well, and there were no changes in modifying factors. (R. 233.) At this appointment, Genc admitted to not being compliant with her folic acid. (R. 233.) On August 20, 2007, Dr. Guma indicated that Genc's condition remained the same. (R. 230.) On November 19, 2007, Dr. Guma noted that Genc was "worse clinically," and that "[p]rolonged standing and walking especially on a concrete surface and wooden floors are worsening it." (R. 229.) Dr. Guma altered Genc's prescriptions and noted that she must be compliant with her folic acid to lower risk of liver involvement. (R. 229.) On February 25, 2008, Dr. Guma noted that Genc was doing very well but was still not compliant with the folic acid. (R. 226.)

In a disability determination letter dated March 20, 2008, Dr. Guma stated that Genc "has had increasing pain and stiffness in her hands, wrists and knees . . . [and] has with difficulty standing for prolonged period[s] of time because of arthritis and involvement of her feet." (R. 17, 275.) On June 16, 2008, Dr. Guma noted that Genc had been compliant with her folic acid and was feeling well, except for some pain in her feet. (R. 268.) On September 30, 2008, Dr. Guma noted that Genc was doing well regarding her Lupus, but now had degenerative arthritic complaints in her feet bilaterally and was having trouble standing for long periods of time. (R. 264.) Dr. Guma prescribed 7.5 mg of Meloxicam per day. (R. 265.) On December 11, 2008, Dr. Guma noted that she was doing well except for a recent onset of diplopia, but that an eye exam showed no visual defect. (R. 258.) Dr. Guma ordered an MRI of her head for possibility of neurological causes, and kept Genc on her medication. (R. 259.)

On March 10, 2009, Dr. Guma noted that her double vision had resolved and that she had less pain in her feet along the dorsum and midfoot areas. (R. 253.) Dr. Guma directed Genc to continue on her medications and ordered x-rays of both her feet to assess the degree of

degenerative change.  (R. 254.)  On June 30, 2009, Dr. Guma noted that she was doing well and he did not change the treatment plan.  (R. 248-49.)  On September 29, 2009, Genc was seen by Dr. Guma for an evaluation of rheumatoid arthritis.  (R. 283.)  Dr. Guma noted that she was doing well, there were no significant changes, and continued her on the same medication.  (R. 283-284.)

On January 7, 2010, Dr. Guma indicated that Genc "fe[lt] fine," had no increasing joint pain and had not shown any signs of inflammation.  (R. 17, 279.)  On April 7, 2010, Dr. Guma noted that Genc felt ongoing pain in her feet and that it worsened when she walked for long periods of time.  (R. 17, 276.)

### C. Testimonial History and Medical Evidence

At the May 6, 2010 hearing, ALJ Lissek asked Rocco J. Meola ("Meola"), a Vocational Expert ("VE"), to indicate the exertional level and requirements of Plaintiff's past work.  (R. 51.)  Meola testified that the exertional level was sedentary, and that it required frequent "fingering and handling."  (R. 51.)  ALJ Lissek then asked Meola to assume several different hypothetical individuals with Genc's vocational profile.  (R. 53-55.)

Genc also testified at the hearing.  (R. 25-60.)  Genc stated that "[her] feet are always in pain. . .[and she] ha[s] a hard time opening things, opening the door. [She] ha[s] a hard time lifting, picking up anything . . . [She] do[esn't] even use a computer at all now because it hurts [her] hands."  (R. 37, 40-41.)  Genc stated that she can stand comfortably for about ten minutes before her feet get swollen and painful and she has to sit down.  (R. 40.)  She testified that she has pain when sitting as well.  (R.41.)  Genc stated that she can only lift about two to three pounds.  (R. 44.)  She also testified that she has problems "fingering and handling," to the point that she cannot type or grip things for very long.  (R. 47-48.)

In contrast to Genc's testimony, Dr. Guma noted that aside from pain in her feet that worsened after long periods of walking, Genc was otherwise doing well. (R. 17, 276.) Dr. Guma's medical notes did not mention hand pain, joint pain, or signs of inflammation. (R. 17, 279.) ALJ Lissek compared the objective medical evidence with Genc's testimony. ALJ Lissek determined that although Genc's medically determinable impairments could reasonably cause the alleged symptoms, Genc's statements concerning the "intensity, persistence, and limiting effects" were inconsistent with the medical evidence. (R. 17-18.) Thus, ALJ Lissek found Genc's testimony to be not credible. (R. 17-18.)

Taking into account the medical evidence and the VE's testimony, ALJ Lissek found that Plaintiff had the Residual Functional Capacity ("RFC") to perform her past relevant work. (R. 18.)

**PROCEDURAL HISTORY**

On October 3, 2007, Genc filed an application for SSDI Benefits alleging disability since October 3, 2007. (R. 13, 116-20.) On April 18, 2008, the Social Security Administration ("SSA") denied Genc's application, stating that her condition does not keep her from working. (R. 13, 65-69.) The application was again denied on reconsideration on October 2, 2008. (R. 13, 77-79.) On May 5, 2010, ALJ Lissek held a hearing to conduct a de novo review of Genc's case. (R. 25-60.) On May 12, 2010, ALJ Lissek issued a decision finding that Genc could perform her past relevant work as a data entry clerk and receptionist and was therefore not disabled. (R. 13-19.)

On April 16, 2012, the Appeals Council denied Genc's request for review. (R. 1-3.) On June 13, 2012, Genc filed the instant appeal in this Court.

5

**LEGAL STANDARD**

In social security appeals, this Court has plenary review of the legal issues decided by the Commissioner. Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Bailey v. Comm'r of Soc. Sec., 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" Bailey, 354 F. App'x. at 616 (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." Cruz v. Comm'r of Soc. Sec., 244 F. App'x. 475, 479 (3d Cir. 2007) (citing Hartranft, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. See Scott v. Astrue, 297 F. App'x. 126, 128 (3d Cir.

2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." Cruz, 244 F. App'x. at 479 (citing Hargenrader v. Califano, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979) (quoting Saldana v. Weinberger, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

**DISCUSSION**

An individual will be considered disabled under the Social Security Act if he or she is unable to "engage in any substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically accepted clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged[.]" 42 U.S.C. § 423(d)(5)(A).

In determining disability, the SSA utilizes a five-step sequential analysis. <u>See</u> 20 C.F.R. § 416.920; <u>see also</u> <u>Cruz</u>, 244 F. App'x. at 479. A determination of non-disability at steps one, two, four, or five in the five-step analysis ends the inquiry. <u>See</u> 20 C.F.R. § 416.920. A determination of disability at steps three and five results in a finding of disability. <u>See id.</u> Contrarily, if an affirmative answer is determined at steps one, two, or four, the SSA proceeds to the next step in the analysis. <u>See id.</u>

Genc raises three main issues on appeal: (1) The ALJ erred in step three of the analysis by determining that Genc's impairments did not match and were not equivalent to any listed impairment; (2) the ALJ erred in step four of the analysis by determining that Genc retained the RFC to perform her past relevant work; and (3) the ALJ erred in interpreting the Vocational Expert's testimony.

**A. Step One:  Whether Genc has performed any "substantial gainful activity"**

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). <u>See</u> 20 C.F.R. 416.920(b). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. <u>See</u> 20 C.F.R. 416.972(a). If an individual engages in SGA, she is not disabled regardless of the severity of her physical or mental impairments. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987). If the individual is not engaging in SGA, the ALJ proceeds to the next step. <u>See id.</u>

Here, ALJ Lissek determined that Genc met the insured status requirements through December 31, 2012 and that she had not engaged in SGA since the alleged onset date of October 3, 2007. (R. 15.)

**B. Step Two: Whether Genc has a "severe" impairment or combination of impairments affecting her ability to do basic work activities**

At step two, the ALJ must determine whether the claimant has a medically determinable severe impairment or a severe combination of impairments. See 20 C.F.R. 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. See 20 C.F.R. 416.921. An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. See id. If the claimant does not have a severe impairment or severe combination of impairments, she is not disabled. See 20 C.F.R. 416. 972(c). If the claimant has a severe impairment or severe combination of impairments, the analysis proceeds to the third step. See id.

Here, ALJ Lissek determined that Genc had severe impairments of degenerative arthritis and Lupus which result in vocationally significant limitations. (R. 15.) Because they lasted at a "severe" level for a continuous period of more than twelve months, they constitute severe impairments. (R. 15.) Genc argues that because ALJ Lissek failed to consider her obesity at step two, a remand for consideration of the obesity is warranted. (R. 15.)

This Court finds that remand is unwarranted. ALJ Lissek relied on the opinion of Dr. Guma, who was aware of Genc's weight yet attributed no limitation based on it. ALJ Lissek also reviewed the opinion of Dr. James Paolino who was aware of Genc's weight and also attributed no limitations to it. Although ALJ Lissek did not expressly give consideration to Plaintiff's weight, it was implicitly considered through the physicians' opinions. Furthermore, even if ALJ Lissek failed to consider Genc's obesity as a severe impairment, she still found in Genc's favor

at step two. Therefore, any alleged error was harmless and remand is not warranted. See Salles v. Commissioner of Social Sec., 229 Fed. App'x 140, 145 *2 (3d. Cir. 2007).

### C. Step Three: Whether Genc's impairment matches or is equivalent to a listed impairment

At step three, the ALJ must "compare the claimant's medical evidence to a list of impairments presumed severe enough to negate any gainful work." Caruso v. Comm'r of Soc. Sec., 99 F. App'x. 376, 379 (3d Cir. 2004). When a claimant's impairments meet or equal a listing, "disability is conclusively established and the claimant is awarded benefits." Knepp, 204 F.3d at 85. The Third Circuit requires the ALJ to "fully develop the record and explain his findings at step three." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000). The ALJ is required to issue more than just a conclusory statement that a claimant does not meet the listings. See Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (citing Burnett, 220 F.3d at 119-20).

In the instant matter, ALJ Lissek determined that Genc did not have an impairment or combination of impairments that met or equaled any of the listed impairments. (R. 15.) ALJ Lissek determined that neither Genc's Lupus nor arthritis satisfied the severity requirements of Section 14.02 (Lupus) or Section 14.09 (Arthritis) as determined by the SSA. (R. 16.)

Genc raises several arguments. First, Genc argues that ALJ Lissek erred in not considering the two impairments in tandem, and that when considered together they result in an impairment medically equivalent to the listings. (Pl.'s Br. 12, 16.) Genc further argues that ALJ Lissek is required to "combine and compare," and that this requirement has been upheld by the Third Circuit in Torres v. Commissioner, 279 Fed. App'x 149 (3d Cir. 2008). (Pl.'s Br. 11) Furthermore, Genc argues that ALJ Lissek failed to consider her obesity in making the determination, as is required by SSR 00-3P, 2000 WL 62849 SSA. (Pl.'s Br. 12-15.)

10

Additionally, Genc argues that ALJ Lissek erred in her analysis of Genc's impairments with regard to each individual listing. (R. 16.) Genc argues that ALJ Lissek failed to provide a thorough analysis of why each impairment failed to meet the listings, and instead just offered "a verbatim recitation of each listing in the negative." (Pl.'s Br. 16-17.) Genc argues that this "verbatim recitation" fails to satisfy the requirements under Burnett. (Pl.'s Br. 17.)

This Court holds that ALJ Lissek properly considered all of Genc's impairments in reaching her decision. ALJ Lissek identified the listings considered and further specified each criteria that Genc did not meet. (R. 16.) ALJ Lissek established that Genc did not meet the requisite impairments to satisfy the listings. (R. 16.) ALJ Lissek carefully considered the medical notes and reports of Genc's long-time treating physician Dr. Guma, and her findings are fully supported by Dr. Guma's records. (R. 17.) ALJ Lissek relied on these notes in determining that Genc's Lupus did not meet Sections 14.02(A) or 14.02(B), and that her arthritis did not meet Section 14.09. (R. 16.)

This Court also holds that ALJ Lissek appropriately considered Genc's obesity in rendering her decision. The ALJ considered the opinion of Dr. Guma, which did not once mention any limitations attributable to Plaintiff's weight. See (R. 275.) Furthermore, Dr. Guma's treatment notes did not make mention of any limitations attributable to Plaintiff's weight. ALJ Lissek also considered the April 28, 2008 RFC assessment of Dr. Paolino, which mentioned no limitations attributable to Genc's weight. (R. 237-44.) Because ALJ Lissek considered all the medical evidence on record with knowledge of Genc's weight, her finding that Genc's weight was not a severe impairment is supported by substantial evidence.

**D. Whether ALJ Lissek properly determined Genc's RFC**

After step three, but before considering step four, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). See 20 C.F.R. § 416.920(e); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. See 20 C.F.R. § 404.1545. In making this determination, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. See 20 C.F.R. § 416.920(e), 416.945.

Here, ALJ Lissek determined that Genc had the RFC to perform sedentary work since she could "sit for 6 hours, stand for 2 hours; walk for 2 hours in an 8 hour day; with occasional climbing of stairs and ramps; no climbing of ladders or scaffolds; no balancing, kneeling, crouching or crawling; occasional stooping; and no exposure to unprotected heights or moving mechanical parts." (R. 16.) This assessment was based on the opinions of Dr. Guma and Dr. Paolino. (R. 17.) Importantly, ALJ Lissek did not include any manipulative limitations such as handling, fingering, or reaching limitations, "since the record reflects that the claimant never objectively or subjectively had handling, fingering, or reaching limitations." (R. 18.)

Genc argues that the ALJ erred in not mentioning any limitation in Plaintiff's ability "to perform fine and gross manipulation." (Pl.'s Br. 25.)

This Court holds that ALJ Lissek's RFC assessment was based on the substantial evidence of record and therefore was not in error. "The treating source's opinion is entitled to controlling weight only when it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Johnson v. Comm'r of Soc. Sec., 529 F.3d. 198, 202 (3d Cir.

2008.) Plaintiff's treating physician, Dr. Guma, made little mention of any manipulative restrictions, therefore the ALJ appropriately gave it no weight.

### E. Step Four: Whether Genc had the RFC to perform the requirements of her past relevant work

At step four, the ALJ must determine whether the claimant has the RFC to perform the requirements of her past relevant work. See 20 C.F.R. 416.920(f). "Past relevant work" means work performed within the fifteen years prior to the date that disability must be established. See id. If the claimant has the RFC to do her past relevant work, she is not disabled.

In this case, ALJ Lissek determined that Genc had the RFC to perform the requirements of her past relevant work. (R. 18.) Genc argues that the VE's testimony on which ALJ Lissek relied is flawed because it was based on deficient hypotheticals that ALJ Lissek posed. (Pl.'s Br. 21-25.) Specifically, Genc argues that "none of the hypothetical questions after the first one have anything to do with the substantial evidence of record." (Pl.'s 25.)

This Court holds that the hypotheticals posed to the VE were not deficient. As this Court has decided, ALJ Lissek's RFC assessment was based on the substantial evidence on record. The hypotheticals posed by ALJ Lissek to the VE were appropriately based on the RFC assessment. Thus, this Court finds that ALJ Lissek's reliance on the VE's testimony was proper. Accordingly, ALJ Lissek appropriately determined that Genc could do her past relevant work and is therefore not disabled.

**CONCLUSION**

For the foregoing reasons, this Court **AFFIRMS** ALJ Lissek's decision.

s/Susan D. Wigenton, U.S.D.J.